IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHANNON LAMASTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| CITY OF EVANSTON and | ) | |
| ANN MARIE HEISER, | ) | JURY DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Shannon Lamaster, by her attorneys, brings this Complaint against Defendants the City of Evanston (the "City") and Ann Marie Heiser for violations of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. In support of her claims, Lamaster states as follows:

### Background

1. Plaintiff challenges the City of Evanston's and Heiser's interference with her right to take leave under the Family and Medical Leave Act ("FMLA"). Lamaster also challenges Defendants' retaliation against her when she attempted to exercise her FMLA rights to care for her newborn child and when she opposed Defendants' interference with her FMLA rights.

### Parties

2. Plaintiff Shannon Lamaster is an individual residing in Libertyville, Lake County, Illinois. Lamaster was employed by the City from November 17, 2014 until January 3, 2018.

3. The City is and was at all times relevant an Illinois municipal corporation.

4. Defendant Ann Marie Heiser is an individual residing in Cook County, Illinois, and is and was at all relevant times Recreation Manager for the City's Parks, Recreation & Community Service and Robert Crown Community Center.

**Jurisdiction and Venue**

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 2617(a)(2) (FMLA).

6. The employment practices alleged to be unlawful were committed within the Northern District of Illinois. Venue is, therefore, proper under 28 U.S.C. § 1391(b).

**Facts**

7. Plaintiff was employed by the City as a Skating Program Coordinator at the Robert Crown Community Center until the City promoted her to be a Skating Program Supervisor in April 2015.

8. On December 28, 2016, Heiser became Lamaster's supervisor.

9. In January 2017, Plaintiff disclosed her high-risk pregnancy to Heiser, stating that she was experiencing pregnancy-related complications and pain. Lamaster asked Heiser not to disclose her pregnancy to anyone because it was still in the early stages.

10. Despite Lamaster's request, at a staff meeting on January 26, 2017, Heiser made comments to the staff such that Lamaster felt compelled to disclose her pregnancy to everyone at the meeting.

11. Beginning on January 26, 2017, Lamaster's obstetrician required her to visit him weekly so he could monitor her high-risk pregnancy and assess if she needed to deliver her baby early. Lamaster typically scheduled these medical appointments during her lunch break. Because

she had a flex-schedule and usually worked in excess of her required 37.5 hours per week, she believed it would not matter if her doctor's appointments were occasionally longer than an hour.

12. Due to her high-risk pregnancy, Lamaster was tentatively scheduled to deliver her baby by caesarian section on June 19, 2017, a week prior to her June 26, 2017 due date, and her obstetrician was considering whether to deliver the baby even earlier.

13. Later in January 2017, Heiser asked Lamaster when she was planning to take FMLA/maternity leave.

14. In February of 2017, Lamaster told Casey Solomon, the City's Human Resources Specialist, that Heiser had made Lamaster disclose her pregnancy at a staff meeting. Lamaster also asked Solomon for direction on how and when to submit FMLA paperwork. They agreed to meet closer to when the paperwork was due, which, under the FMLA, was thirty days prior to the day she intended to take leave.

15. At another staff meeting on March 16, 2017, Heiser announced that Lamaster would be taking maternity leave (*i.e.*, FMLA leave) and would be out all summer. Heiser instructed staff that they had permission, to which Lamaster never agreed, to contact Lamaster during her FMLA leave but that Lamaster was not permitted to contact them.

16. On around March 17, 2017, Heiser instructed Lamaster to submit FMLA paperwork sixty days before her FMLA/maternity leave would start, contrary to the requirements of the FMLA, as well as the City's own policies.

17. Lamaster responded by telling Heiser that she had already inquired about her obligations under the FMLA with Casey Solomon and that the maximum notice required was thirty days. Heiser answered that "talking to Casey" is different from turning in paperwork.

18. On March 21, 2017, Heiser's supervisor, Lawrence Hemingway, Director of Parks and Recreation, congratulated Lamaster on her pregnancy. Heiser interrupted their conversation to demand again that Lamaster submit her FMLA paperwork, this time by the end of March, which would have been approximately ninety days prior to Lamaster's tentatively-scheduled June 19, 2017 delivery.

19. On March 30, 2017, Lamaster attended a medical appointment with her obstetrician during her lunch break. When Lamaster returned, Heiser yelled at her for over an hour, demanded that Lamaster inform her of all upcoming medical appointments, and directed her that she could not leave the building to attend the appointments without Heiser's permission, even if it was during Lamaster's lunch break.

20. Heiser never restricted Lamaster from activities on her lunch break prior to Lamaster's disclosure of her pregnancy.

21. In addition, Heiser told City employee Jill Silverman not "to baby" Lamaster when Lamaster wasn't feeling well due to her pregnancy.

22. Defendants never informed Lamaster of her right to take FMLA leave for medical appointments or when she was in pain arising from her pregnancy-related medical condition.

23. On April 6, 2017, Lamaster complained to Hemingway about Heiser's requirement that Lamaster give more notice than the FMLA required and about Heiser's hostility toward Lamaster since she disclosed her pregnancy, which necessitated the FMLA leave. She also complained that no one else was punished for leaving during their lunch breaks. Lamaster told Hemingway she wanted him to file a complaint pursuant to the City's Healthy Workplace policy. Hemingway told Lamaster that he would speak with Heiser about Lamaster's complaints.

24. On April 12, 2017, six days after Lamaster's complaint to Hemingway, Heiser placed Lamaster on a Work Plan (*i.e.*, a "Performance Improvement Plan"). Bob Dorneker, Recreation Superintendent, was also present at the meeting to discuss the Work Plan. Heiser told Lamaster she was placing her on the Work Plan because Lamaster was not working hard enough. The Work Plan, among other things, required Lamaster to keep her calendar up to date and to notify Heiser of her personal appointments.

25. Lamaster was working in excess of her required 37.5 hours per week and recorded all medical appointments she had during the workday on the Google calendar she shared with Heiser and her Department.

26. Heiser did not impose these scheduling requirements on employees who had not sought FMLA leave or on employees who had not complained. For example, James Faedtke was not required to seek permission to leave during his lunch break and Jill Silverman was not required to place her time on the Google calendar.

27. Later on April 12, 2017, Lamaster requested a meeting with Dorneker to complain about the Work Plan. Dorneker did not respond to her request.

28. Lamaster submitted her FMLA paperwork on or about May 12, 2017, more than thirty days before her anticipated delivery date of June 19, 2017. The City ultimately approved Lamaster's leave.

29. On approximately May 17, 2017, Heiser issued Lamaster a five-day suspension, allegedly for not requesting two days of leave the precise way Heiser prescribed, and for not complying with the Work Plan.

30. Lamaster had just worked more than two weeks straight and had complied with the Work Plan, including the Work Plan's requirements for taking leave on her flex-schedule.

Lamaster had even submitted a Request for Time Off, which was not required for employees like her who worked on "flex" schedules.

31. Other employees who were not seeking FMLA leave and who had not complained were permitted to take time off work after they had worked several days in a row and after working in excess of their requisite hours, without reprisal.

32. On or around May 18, 2017, Lamaster complained to Solomon that Heiser was retaliating against her by ordering the suspension.

33. On or around May 19, 2017, Lamaster complained to Dorneker that Heiser was retaliating against her by ordering the suspension.

34. Lamaster was nevertheless suspended and forced to take unpaid leave from May 22 to May 26, 2017.

35. On May 25, 2017, Lamaster emailed Hemingway and Dorneker complaining about her suspension and the fact that Heiser had yelled at her on March 30th for visiting the doctor.

36. On June 14, 2017, Lamaster requested to have someone assigned to push tables for an upcoming ice-skating event. Heiser declined Lamaster's request, which resulted in Lamaster having to push heavy tables (with Heiser watching), even though pushing tables was not part of Lamaster's supervisory duties. While pushing the tables, Lamaster's water broke and she went into labor. She delivered her baby the next day.

37. Lamaster took FMLA leave from June 14, 2017 to September 3, 2017.

38. In August 2017 while Lamaster was on FMLA leave, James Faedtke and Sharon Seidon contacted Lamaster and asked her to do some work remotely. Faedtke told Lamaster that Heiser had directed him to make this request.

6

39. Per letter dated August 29, 2017, Lamaster obtained permission to take intermittent FMLA leave on September 13, 20, and 27; and October 4 and 11, 2017, to care for her newborn son. Heiser was copied on that letter.

40. On September 22, 2017, Lamaster asked the City's Human Resources Department to review the May 2017 suspension. The City refused to reverse the suspension.

41. On October 4, 2017, when she was on FMLA leave caring for her newborn, Heiser ordered Lamaster to come to work without advance notice, requiring Lamaster to bring her newborn child to work.

## COUNT I
## Violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.
## (Against the City and Heiser)

42. Plaintiff incorporates by reference the preceding paragraphs.

43. Plaintiff was at all relevant times an "eligible employee" under the FMLA, 29 U.S.C. §2611(2).

44. The City was at all relevant times a covered "employer" under the FMLA, 29 U.S.C. § 2611(4).

45. Heiser was at all relevant times a covered "employer" under the FMLA, 29 U.S.C. § 2611(4).

46. Beginning in December 2016, Lamaster had a "serious health condition" related to her pregnancy, entitling her to FMLA leave.

47. Beginning in June 2017, after Lamaster delivered her baby, she was entitled to take up to 12 workweeks of job-protected FMLA leave to care for her newborn child. 29 U.S.C. § 2612(a)(1).

48. Defendants were on notice of Lamaster's entitlement to take FMLA leave both during and after her pregnancy and her intent to take FMLA leave.

49. Lamaster was entitled to notice that she was eligible to take FMLA leave during her high-risk pregnancy, but Defendants did not provide such notice.

50. Through their actions described above, Defendants interfered with, restrained, and denied Plaintiff the exercise of her rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

51. Through their actions described above, Defendants retaliated against Lamaster for exercising her FMLA rights and for opposing any practice which is unlawful under the Act, in violation of 29 U.S.C. § 2615(a)(2).

52. As a result of Defendants' conduct, Lamaster has suffered damages, including lost wages and benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. Award Plaintiff the value of wages, salary, employment benefits, and other compensation lost as a result of Defendants' unlawful conduct;

B. In the alternative, award Plaintiff the value of her actual monetary losses sustained as a direct result of the violations;

C. Enjoin Defendants and all officers, agents, employees, and all persons in active concert or participation with them from further violations of the FMLA;

D. Award Plaintiff her reasonable attorneys' fees, costs, and expenses;

E. Award Plaintiff pre-judgment interest; and

F. Order all other appropriate relief as the interests of justice may require.

**JURY DEMAND**

Plaintiff demands trial by jury on all claims and issues that may be tried to a jury.

May 14, 2019 **SHANNON LAMASTER**

By: /s/ Cynthia H. Hyndman
    One of her attorneys

Cynthia H. Hyndman
Laura R. Feldman
ROBINSON CURLEY P.C.
300 S. Wacker Drive
Suite 1700
Chicago, Illinois 60606
(312) 663-3100 Telephone
(312) 663-0303 Facsimile
chyndman@robinsoncurley.com
lfeldman@robinsoncurley.com